J-S76030-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: C.P., A MINOR  APPEAL OF: | : | IN THE SUPERIOR COURT OF |
| B.P., BIOLOGICAL MOTHER | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1137 WDA 2018 |

Appeal from the Order Entered, July 6, 2018,
in the Court of Common Pleas of Allegheny County,
Orphans' Court at No(s):  CP-02-AP-0000058-2018.

BEFORE:  BENDER, P.J.E., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY KUNSELMAN, J.:                FILED FEBRUARY 19, 2019

Appellant, B.P. ("Mother") appeals from the order involuntarily terminating her parental rights to C.P. ("Child") pursuant to the Adoption Act, 23 Pa.C.S.A. §§ 2511(a) and (b).  After careful review, we affirm.

The trial court's factual findings and procedural history are as follows: B.P. is the birth mother of C.P., born in June 2013.  The Allegheny County Office of Children, Youth, and Families ("the Agency") first became involved with Mother and Child in 2014.  In August 2014, the Agency obtained an emergency custody authorization and removed the Child from Mother's care. The Child was adjudicated dependent on September 26, 2014, during which time Mother was incarcerated.

Upon Mother's release from incarceration, she began visiting the Child and complying with her court ordered goals.  The Child was returned to Mother's care in the spring of 2015 and the dependency case was closed on

June 23, 2015. Between January 2016, and March 2017, the Agency received six reports regarding the family which raised concerns about parental criminal activity and arrests, parental drug use, exposure of the Child to drug abuse, deplorable and unsafe housing, and inappropriate supervision of the Child, general neglect of the Child related to lack of appropriate hygiene, food and parent's inability to provide for child's basic needs.

The Agency was unable to locate the family until May 2017, when a caseworker learned of Mother and Father panhandling at a certain intersection in the City of Pittsburgh. Both Mother and Father had active arrest warrants. Mother was arrested and incarcerated. Several days later, Father was taken into custody where he provided the caseworker with the address where the Child was located. The caseworker reported that the house was in deplorable condition, with garbage strewn throughout the home. The Child was wearing only a tank top, was naked from the waist down, and was dirty with feces going up her back.

The Agency obtained an emergency custody authorization and the Child was removed and placed in foster care. The Child was adjudicated dependent again on July 18, 2017. Mother failed to appear for the hearing. The court ordered Mother to undergo a drug and alcohol assessment, participate in parenting classes, and to obtain stable housing.

Two permanency hearings were held, one on October 18, 2017, and the second on January 23, 2018. Mother did not appear for either hearing. The court determined at each of these hearings that "Mother had failed to comply

with the permanency plan and had not made any progress towards alleviating the circumstances that necessitated the Child's placement." Trial Court Opinion, 9/6/18, at 4 and 5.

On March 9, 2018, the Agency filed a petition to terminate Mother's parental rights. The trial court held an evidentiary hearing on the petition on July 6, 2018. The Child's legal interests were properly represented by counsel pursuant to 23 Pa.C.S.A. § 2313(a). See N.T., 7/6/18, at 71.

At the conclusion of testimony and argument from counsel, the trial court entered a written order terminating Mother's parental rights under 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8) and (b). This appeal follows. Both Mother and trial court have complied with Pa.R.A.P. 1925.

Mother raises the following issue on appeal:

> 1. Did the trial court abuse its discretion and/or err as a matter of law in concluding that [the Agency] met its burden of proving by clear and convincing evidence the termination of [Mother's] parental rights would best serve the needs and welfare of [Child] pursuant to 23 Pa.C.S. § 2511(b).

Mother's Brief at 8.

"[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights." In re Adoption of S.P., 47 A.3d 817, 826 (Pa. 2012). This standard of review requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." Id. "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion."

Id. We may reverse a decision based on an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." Id. We may not reverse, however, "merely because the record would support a different result." In re T.S.M., 71 A.3d 251, 267 (Pa. 2013).

We give great deference to the trial courts "that often have first-hand observations of the parties spanning multiple hearings." Id. Moreover, the trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. In re M.G., 855 A.2d 68, 73-74 (Pa. Super. 2004).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. In re R.N.J., 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." Id. (citation omitted).

Mother concedes that the Agency presented sufficient evidence to terminate her parental rights pursuant to Section 2511(a). Thus, we need not discuss Section 2511(a) further.

We also agree with the trial court's determination that the Agency met its burden under 23 Pa.C.S. § 2511(b), and that terminating Mother's parental rights is in the best interest of the Child.

With respect to Section 2511(b), our analysis shifts focus from parental actions in fulfilling parental duties to the effect that terminating the parental bond will have on the child. Section 2511(b) "focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." In re Adoption of J.M., 991 A.2d 321, 324 (Pa. Super. 2010).

In In re C.M.S., 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court found that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, the trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." Id. The extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. In re K.M., 53 A.3d 781, 791 (Pa. Super. 2012).

In the instant case, the trial court concluded the record established clear and convincing evidence that the termination of Mother's parental rights would serve the best interest of the Child. Additionally, the trial court found that Child's foster parents provide her with security and that the Child has bonded with them and desires to be adopted. The court explained:

> Mother has an extensive criminal history with a number of incarcerations in various counties throughout Pennsylvania. Mother was never able to successfully complete any of her court ordered goals. Mother has never appeared for random drug screens, does not have stable housing or employment, and has not maintained contact with [the Agency]. Mother

has not consistently attended visitation with her child and has gone substantial periods with no contact with the child, most notably from May 30, 2017 until January 23, 2018. Mother has seen the Child twice since the Child was adjudicated dependent in May 2017.

The Child is well cared for in her current foster home where she has lived since she was first removed from her parent's care in May 2017. The caseworker reports that the Child is comfortable in the foster home and looks to her foster parents for comfort, support, and security. The foster parents located and enrolled the Child into therapy and are meeting her needs in their home. Foster Mother testified that the Child had abnormal sleeping patterns and severe anxiety when she first arrived in their home. The past year in the foster home has provided the Child with the stability required to normalize her sleeping patterns and to have developed a close and loving bond with her foster parents. After a successful course of therapy the Child is now able to understand what the process of adoption entails. The Child has expressed a desire to be adopted by her current foster parents.

Trial Court Opinion, 9/6/18 at 6-7.

Mother argues that the trial court abused its discretion and/or erred in concluding that the Agency presented clear and convincing evidence that termination of her parental rights would best serve Child's needs and welfare pursuant to 23 Pa.C.S.A. § 2511(b). Specifically, Mother argues that the Agency failed to acknowledge the existence of the bond between her and Child, therefore, it follows that the Agency failed to introduce testimony or evidence that demonstrated what the effect would be in severing the parent/child bond on Child. Mother emphasizes that a trial court must consider "whatever bonds may exist between the children and appellant, and as well as the emotional effect that termination will have upon the children."

Mother's Brief at 16 (citing In re Adoption of C.P.R., 741 A.2d 666 (Pa. 1999). We disagree.

It appears that the trial court discussed the bond only briefly in its opinion simply because there is little to discuss. In other words, the bond that exists between Mother and the Child – if any – is of the slightest sinew. Mother's assertion that she was only "permitted to see her child two times in the span of a year" is disingenuous. Mother's Brief at 10. Mother could have participated in supervised visits with the Child between May 30, 2017 and October 18, 2017, but never did. Her visits were suspended on the latter date, pending an assessment. Mother did not seek an assessment until three months later. After the assessment, Mother visited the Child twice in February 2018. She then failed to obtain a provider for therapeutic visitation as ordered by the court. Therefore, visits were not renewed.

Additionally, Mother emphasizes that terminating parental rights based on the conclusion that a child would be better off in a prospective adoptive home is insufficient. She argues that although "the Agency evidenced that [Child's] foster parents could meet [Child's] needs, the agency did not address whether Mother could also meet those needs were she in a different position to do so, and to what effect severance of the parent/child bond would have on [Child]. Mother's Brief at 17-18.

Contrary to Mother's claim on appeal, the record is replete with evidence of a detriment to the Child if Mother's rights were not terminated. For instance, Foster Mother testified that after the Child's two visits with Mother

- 7 -

in February, the Child reverted back to unsettled behavior, such as sleeping at the stairs to watch the front door "to make sure that nobody came in." N.T., at 60. There is no evidence of record, however, that the Child would suffer extreme emotional consequences should the parent-child relationship be severed. Indeed, the Child has expressed a desire to be adopted by her foster parents and has a sophisticated comprehension of the adoption process, including, what that would mean regarding the relationship with Mother. Even if the court found an emotional bond existed between Mother and the Child, the mere existence of an emotional bond between them does not preclude the termination of her parental rights. T.S.M., 71 A.3d at 267.

Moreover, when performing a needs and welfare analysis, trial courts are permitted to consider the totality of the circumstances. In re Coast, 561 A.2d 762, 771 (Pa. Super. 1989) (en banc). The bond between a parent and a child must not be viewed solely from the child's viewpoint; rather, a bilateral relationship must exist which comes from the parent's willingness to parent appropriately. In re K.K.R.-S., 958 A.2d 529, 534-35 (Pa. Super. 2008). In this manner, Mother's inability to parent remains relevant to consideration of the Child's needs under Section 2511(b). By not contesting the trial court's findings regarding Section 2511(a), Mother concedes her inability to parent.

In considering the totality of the circumstances, the trial court concluded that the best interest of the Child, that is, permanency and stability, would best be served by terminating Mother's parental rights. Our review readily supports this conclusion.

In sum, our review of the record supports the trial court's determination that the Agency met its burden of proving by clear and convincing evidence that Mother's parental rights should be terminated pursuant to 23 Pa.C.S. § 2511(b). Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/19/2019